**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

MICHAEL A. BRADY, )
  )
    Plaintiff, )
  )
-vs- ) Case No. 06-CV-282-SPF-PJC
  )
UBS FINANCIAL SERVICES, INC. )
and GREATER SOUTHWEST )
FUNDING CORPORATION, )
  )
    Defendants. )

**ORDER**

On June 16, 2009, the court entered an order denying Defendants' Motion to Dismiss the Complaint for Lack of Subject Matter Jurisdiction. The court concluded that it has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because the parties are diverse in citizenship and the amount in controversy exceeds $75,000.00. Specifically, in regard to the amount in controversy, the court found that the "potential award of reasonable attorney fees [under 12 O.S. 2001 § 936] should be included in determining whether the jurisdictional amount is satisfied . . . [and] any potential award in this case would clearly exceed $2001.00[1], the amount required for the amount in controversy in this case to exceed $75,000.00." *See*, Order, doc. no. 72, pp. 4-5.

I.

Presently before the court is Defendants' Motion for Reconsideration. In their motion, defendants contend that the court's June 16 order violates United States

---

[1] The court notes that the $2,001.00 figure is in error and should actually be $2,000.01.

Supreme Court and Tenth Circuit precedents.  Citing <u>Missouri State Life Ins. Co. v. Jones</u>, 290 U.S. 199 (1933) and <u>Evitt v. Durland</u>, 2000 WL 1750512 (10th Cir. Nov. 28, 2000), defendants assert that attorney fees may only count in determining the amount in controversy when a plaintiff has (1) requested attorney fees in the complaint, (2) cited the specific statute or contract authorizing the award and (3) made sufficiently particular factual allegations supporting a reasonable estimate of the attorney fees.  Defendants contend that plaintiff, in his complaint, has failed to comply with these requirements.  Defendants suggest that the omission of these requirements was intentional.

According to defendants, plaintiff is not seeking to recover attorney fees under § 936, as assumed by the court, because the statute authorizes attorney fees for "the prevailing party," and if defendants prevail, plaintiff will be required to pay their attorney fees.  Additionally, defendants point out that plaintiff would not be able to collect a premium to counsel's lodestar fee under § 936.  Defendants assert that plaintiff is seeking to recover attorney fees under the class action common-fund exception to the American Rule.  However, defendants maintain that attorney fees awarded under this exception cannot count toward the amount-in-controversy requirement.  Furthermore, defendants argue that even if plaintiff were seeking attorney fees under § 936, those fees, under Tenth Circuit precedent, specifically, <u>Martin v. Franklin Capital Corp.</u>, 251 F.3d 1284, 1293 (10th Cir. 2001), could not be aggregated to satisfy the amount-in-controversy requirement.  Defendants assert that the attorney fees must be pro rated across the class, and in order to generate a $2,000.01 attorney fee recovery for plaintiff, the total attorney fee award for the class would have to exceed $5,000,000.  Defendants contend that such award is purely speculative and therefore any attorney fee award may not be used to augment the

2

amount-in-controversy calculation. Hence, defendants request the court to reconsider its June 16 order and dismiss this action for lack of subject matter jurisdiction.

Plaintiff, in response, contends that in a class action lawsuit filed originally in federal court, such as this, there is no requirement for a plaintiff to request attorney fees in the complaint; to cite to a contract or statute authorizing the award or to make particular factual allegations in the complaint as to a reasonable estimate of the attorney fees. According to plaintiff, the cases cited by defendants are distinguishable in that they involved removal jurisdiction and none were class action lawsuits originally filed in federal court. Plaintiff asserts that the "legal certainty" test for the jurisdictional amount may be met by amending the pleadings or submitting affidavits which sufficiently substantiate the amount in controversy. Plaintiff contends that he has clearly pled a class action under Rule 23, Fed. R. Civ. P., and that Rule 23(h) provides that the court may award reasonable attorney fees authorized by law or by the parties' agreement. Plaintiff asserts that his counsel's affidavit establishes that a contingent fee agreement exists between plaintiff and his attorney for fees in an amount which, when allocated pro rata to the putative class, will exceed the amount needed to establish subject matter jurisdiction. Moreover, plaintiff contends that despite defendants' argument to the contrary, the complaint alleges a specific amount of damages in the complaint from which an attorney fee can be reasonably estimated.

In addition, plaintiff argues that Oklahoma common law allows the recovery of attorney fees under the common-fund theory or doctrine. Plaintiff asserts that courts have held that attorney fees may be included in calculating the jurisdictional amount if authorized by statute, contract or other legal authority. Plaintiff maintains that the common-fund doctrine is "other legal authority." Moreover, according to plaintiff, the Oklahoma Supreme Court has concluded that under the common-fund doctrine,

attorney fees may be awarded from the fund itself or may be paid directly by a defendant to plaintiff's attorney based on equitable principles and the exigencies of the case. Because the court may, in its discretion, direct defendant to pay the fees to plaintiff's counsel, plaintiff contends that the attorney fees under the common-fund doctrine may be included in the amount in controversy. Further, plaintiff asserts that under the common-fund doctrine, attorney fees are evaluated as a percentage of the total benefits obtained for the class, and that 25-30 percent of the total benefits is a benchmark for consideration. The amount of attorney fees, plaintiff asserts, may also be influenced by the contingent fee agreement between counsel and the named plaintiff and that a fee in the range of 30-40 percent would be the market rate for class actions in Oklahoma. Plaintiff contends that a reasonable estimate of plaintiff's pro rata share of potential attorney fees, as established by his counsel's affidavit, is sufficient to satisfy the amount in controversy.

     Plaintiff also seeks (in the event that the court believes that it must reconsider its order) to offer additional evidence to prove that at the time the complaint was filed, plaintiff held additional Series B Serial Zero Coupon Bonds ("Series B Bonds") of a face value at maturity of $82,000,which, plaintiff argues, satisfies beyond doubt that the jurisdictional amount is met. Plaintiff requests leave from the court to amend his complaint to add his additional Series B Bonds to satisfy the jurisdictional amount. Plaintiff also maintains that, as previously argued in response to defendants' motion to dismiss, the court may include the post-maturity interest on the Series B Bonds alleged in the complaint to satisfy the jurisdictional amount. Plaintiff asserts that, at the time the complaint was filed, the post-maturity interest due on those Series B Bonds, which were to pay $73,000.00 at maturity, was $5,475.00. Plaintiff argues

4

that this post-maturity interest added to the $73,000.00 satisfies the jurisdictional amount.

Defendants, in reply, argue that the court must reconsider its June 16 order since plaintiff disavows any intention to seek an attorney fee award under § 936. Additionally, defendants argue that plaintiff concedes that Oklahoma common law requires under the common-fund theory that the court award attorney fees out of the common fund. The only exception to this is when the court may exercise its discretion to punish flagrant actions by a defendant. According to defendants, plaintiff latches onto this narrow, bad-faith exception as a shield against the widely-accepted principle that in common-fund recoveries, attorney fees are paid from the fund and do not count toward satisfaction of the amount in controversy. But defendants argue that courts have refused to count attorney fees toward the amount in controversy when no specific amount of attorney fees was alleged in the complaint and when the award is discretionary with the jury. Defendants assert that the complaint fails to request attorney fees in concept or amount and does not allege any basis for the court to take the extraordinary step of requiring defendants to pay attorney fees, if plaintiff prevails.

Defendants also argue that plaintiff cannot use the additional Series B Bonds to satisfy the amount in controversy. Defendants assert that the amount in controversy is measured at the time of the filing of the complaint. When the complaint was filed on May 31, 2006, the additional Series B Bonds were not in default because they did not mature until June 1, 2009. Defendants contend that plaintiff may not amend his complaint to increase the amount in controversy by including the additional Series B Bonds. He may only amend his complaint to substantiate jurisdictional allegations to

show that the amount in controversy exceeded $75,000.00 when the complaint was filed.

In a surreply, plaintiff contends that the amount in controversy is measured by the value of the object of the litigation. According to plaintiff, the value of his claim is the amount of the bonds, plus post-maturity interest, as provided on the face of the bonds. Plaintiff also contends that the future payment on the additional Series B Bonds which matured on June 1, 2009 can be considered in determining the value of his claim. In support of his contention, plaintiff relies upon the court's decision in OK Sales, Inc. v. Canadian Tool & Die, Ltd., 2009 WL 1505561 (N.D. Okla. May 27, 2009), wherein the court found that future contractual benefits are included in calculating the amount in controversy when a plaintiff alleges a continuing breach. *Id*. at *6. Plaintiff contends that the value of his claim is the amount due under the contractual provisions in his bonds, including the $82,000.00 in bonds. According to plaintiff, defendants cannot argue that the value of his claim for the $82,000 at the time of the filing of the complaint was zero. Plaintiff asserts that the bonds had a compound accreted value at the time of the filing of the complaint sufficient to put the value of his claim over $75,000.00. Plaintiff contends that these values are not too speculative to include in the jurisdictional calculation. Plaintiff asserts that defendant, Greater Southwestern Funding Corporation, has not repudiated its ongoing obligation to pay the bonds, although it has, by the Trustee's acceleration and filing of foreclosure, taken the position that it cannot pay the bonds. Finally, plaintiff asserts that he has shown many grounds for assessing attorney fees against defendants, Rule 23, the contingent fee agreement with plaintiff, the common fund exception where the court may exercise its equitable powers to levy attorney fees against defendants, vexatious behavior of defendants during the litigation or failure to follow the order of

the court. Plaintiff contends that the law does not exclude as a legal certainty any one of these legal grounds for an award of attorney fees. Plaintiff asserts that he has demonstrated that it cannot be shown with legal certainty that his claim is for an amount less than the jurisdictional amount.

Upon review, the court concludes that reconsideration of its order is required. As pointed out by defendants, the court, in its June 16 order, concluded that a potential attorney fee award under 12 O.S. 2001 § 936 should be included in determining the amount in controversy. Plaintiff, in its papers filed with the court subsequent to the court's order, has indicated that he will not be seeking attorney fees under § 936. Although plaintiff has argued that other grounds for assessing attorney fees against defendants exist, the court concludes that these grounds are not sufficient for the court to include a fee award in determining the amount in controversy. Rule 23(h) does provide that the court may award reasonable attorney fees that are authorized by law or by the parties' agreement. While plaintiff has a contingent fee agreement with his counsel, plaintiff does not have any agreement with defendants providing for the award of reasonable attorney fees. The court concludes that the existence of a contingent fee agreement between plaintiff and his counsel is not a sufficient basis for including an attorney fee award in the amount in controversy.

Plaintiff is correct that the Oklahoma Supreme Court has recognized the common-fund doctrine for an award of attorney fees. *See*, State ex rel. Burk v. Oklahoma City, 522 P.2d 612 (Okla. 1974). Although plaintiff acknowledges that under the common-fund doctrine, attorney fees are normally awarded from the common fund, rather than against a defendant, plaintiff points out that the Oklahoma Supreme Court in Burk, exercising its plenary powers in equity, specifically ordered that the attorney fees be assessed against the defendants rather than from the common

fund. Plaintiff therefore argues that attorney fees need not be awarded directly from the common fund. However, the court notes that the language relied upon by plaintiff in Burk for allowing the court to require the defendants to pay the fee award directly rather than have the fees paid from the common fund appears to have been stricken on re-hearing. *Id*. at 622.[2, 3] Plaintiff has not pointed to any other authority allowing the court to order attorney fees paid by a defendant rather than from the common fund under the common-fund exception to the American Rule.[4, 5] Because attorney fees are

---

[2] On rehearing, Justice Simms stated:

> Rehearing is hereby Granted for the limited purpose of striking all of the language in the original opinion, beginning at line 35 from bottom of page 622, and all of page 622, and the following is substituted therefor:
>
> 'There is ample authority for allowing attorneys fees to be paid from the fund which is recovered. State, ex rel. Board of County Commissioners of Harmon County v. Oklahoma Tax Commission, 194 Okl. 359, 151 P.2d 797 (1944).
>
> That portion of this Court's judgment requiring Appellee to pay Appellant's attorneys fees is reversed and remanded with directions to pay Appellant's attorneys fees out of the lease payment or payments.

Burk, 522 P.2d at 622.

[3] In addition, in State ex rel. Burk v. City of Oklahoma City, 598 P.2d 659 (Okla. 1979), the Oklahoma Supreme Court stated:

> [The equitable fund doctrine] declares that when an individual, through his efforts, succeeds in creating or preserving a fund, then such individual is entitled to invoke the equitable powers of the Court and have his fees paid *from the fund*.

*Id.* at 660 (emphasis added).

[4] In Oklahoma, the right of a litigant to recover attorney fees is governed by the American Rule. *See*, Barnes v. Oklahoma Farm Bureau Mut. Ins. Co., 11 P.3d 162, 179 (Okla. 2000). This

paid from the common fund under the common-fund doctrine, the court concludes that any attorney fees awarded under the common fund doctrine may not be included in determining the amount in controversy. *See*, Leonard v. Enterprise Rent a Car, 279 F.3d 967, 973-74 (11th Cir. 2002) (holding that attorney fees awarded under the common fund doctrine do not constitute part of a plaintiff's claim against the defendant and cannot be considered for amount-in-controversy purposes); Campbell v. General Motors Corp., 19 F. Supp. 2d 1260, 1269 (N.D. Ala. 1998) ("[o]nce the common fund of the class recovery is established . . ., class counsel's fee is *deducted* from it . . . Because the defendant does not pay the fee, it is not a part of the 'controversy' between the parties") (emphasis in original); In re Citric Acid Antitrust Litigation, 1996 WL 116827, at *4 (N.D. Cal. March 12, 1996) (same).

Plaintiff also points out that the court may award attorney fees for the vexatious behavior of a defendant. In City Nat. Bank & Trust Co. v. Owens, 565 P.2d 4 (Okla. 1977),[6] the Oklahoma Supreme Court upheld the power of the trial court to award a limited attorney fee where a party has engaged in oppressive litigation conduct. However, the bad faith litigation exception is narrow and is not intended to grant the trial court a broad equitable authority to award fees. Wallace v. Halliburton, 850 P.2d

---

rule provides that courts are without authority to award attorney fees in the absence of a specific statute or a contractual provision allowing the recovery of such fees. *Id*. An exception to the American Rule is the common-fund doctrine. Burk, *supra*.; City Nat. Bank & Trust Co. of Oklahoma City v. Owens, 565 P.2d 4, 7 (Okla. 1977). Another exception is the bad faith litigation conduct exception, where attorney fees may be awarded when an opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reason. Barnes, 94 P.3d at 29; City Nat. Bank & Trust Co., 565 P.2d at 7. This latter exception is discussed hereinafter.

[5] Even if the court could order attorney fees to be paid by the defendants, there are no allegations in the complaint and no evidence submitted for the court to be able to exercise its plenary powers in equity to require defendants to pay attorney fees under the common fund doctrine.

[6] City Nat. Bank & Trust Co. v.Owens was modified by 23 O.S. 2001 §103.

9

1056, 1060 (Okla. 1993). In the present case, the court concludes that attorney fees based upon the bad faith litigation conduct exception may not be used in determining the amount in controversy. There are no allegations in the complaint of bad faith or oppressive behavior by defendants and there has been no presentation of evidence through affidavit as to any bad faith or oppressive behavior by defendants.[7]

As has been noted, plaintiff is not relying upon § 936 for an award of attorney fees, and an award of attorney fees under the common-fund exception may not be used in determining the amount in controversy. For these reasons, and because there is no other basis for an award of attorney fees to plaintiff, the court concludes that its June 16 order cannot stand. Therefore, the court concludes that it must proceed with a determination of whether plaintiff may rely upon the contractual post-maturity interest of the B Series Bonds to satisfy the amount in controversy, whether plaintiff may aggregate his claims with the other putative class members to satisfy the amount in controversy and whether plaintiff may amend his complaint to include the additional bonds in the amount of $82,000 to satisfy the amount in controversy.

II.

In order for the court to exercise diversity jurisdiction, "the matter in controversy [must exceed] the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). Plaintiff, in his complaint, alleges that he "purchased 73 B Bonds with a Stated maturity date of December 31, 2005, with an aggregate value at maturity of $73,000.00." Complaint, ¶ 9. Based upon this allegation, defendants

---

[7] Plaintiff also points out in his papers that another exception to the American Rule may exist which permits the award of attorney fees as a sanction for willful disobedience of a court order. *See*, Pettyjohn v. Shalala, 23 F.3d 1572, 1575 (10th Cir. 1994) (citing Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991)). There are no allegations in the complaint and no evidence in the record of any willful disobedience of a court order. The court concludes that attorney fees based upon this exception may not be used in determining the amount of controversy.

10

contend that the amount in controversy "exclusive of interest and costs," does not exceed $75,000.00. Plaintiff, however, argues that his $73,000.00 claim includes contractual post-maturity interest of 15% per annum and that this interest may be included in determining the amount in controversy because it is an essential element of his claim rather than "interest as such."[8] According to plaintiff, post-maturity interest in the amount of $5,475.00 had accrued by the time of the filing of the complaint, thereby bringing the amount due to plaintiff to $78,475.00, an amount in excess of the jurisdictional amount. Plaintiff also argues that he has prayed in his complaint for damages individually and on behalf of the class "in excess of $10,000,000.00" and that he can aggregate the claims of the class to satisfy the jurisdictional amount.

The court concludes that plaintiff may not rely upon the post-maturity interest of 15% per annum in calculating the amount in controversy. Although the Supreme Court has held that interest may be included when the demand for interest "is no longer a mere incident of the principal indebtedness . . . but becomes really a principal obligation, *see*, Edwards v. Bates County, 163 U.S. 269, 272 (1896) (reaffirming and further explaining the holding in Brown v. Webster, 156 U.S. 328 (1895)), the post-maturity interest at issue is not part of the underlying principal obligation. The court concludes that for purposes of determining the jurisdictional amount, it is an accessory demand.

In State Farm Mutual Automobile Insurance Co. v. Narvaez, 149 F.3d 1269, 1271 (10th Cir. 1998), the Tenth Circuit stated:

> Section 1332 provides that the amount in controversy must be met without considering interest and costs. The purpose of excluding interest is to prevent the delay of a suit merely

---

[8] *See*, Brown v. Webster, 156 U.S. 328, 329 (1895).

11

> to accumulate the necessary amount for federal jurisdiction. Thus, interest is not counted if it was an incident arising solely by virtue of a delay in payment of the underlying amount in controversy.

(citations and internal quotation marks omitted).

The post-maturity interest claimed by plaintiff arises solely by virtue of the delay in payment of the bonds. It accrued after the stated maturity of the bonds. It is a charge for the delay in payment. Because the interest represents a delay in payment after maturity, the court concludes that the interest may not be considered for purposes of determining the amount in controversy. *See*, Greene County v. Kortrecht, 81 F. 241 (5th Cir. 1897); Meding v. Receptopharm, Inc., 462 F. Supp. 2d 348, 353 (E.D. N.Y. 2006); Robinchaux v. Glorioso, 2000 WL 1171119 * 2 (E.D. La. 2000); *see also*, Brainin v. Melikian, 396 F.2d 153, 155 (3d Cir. 1968) (noting distinction between interest as "a charge for delay in the payment of money" and interest "as the agreed upon price for the hire of money" and explaining that "Congress' purpose in excluding 'interest' in determining the jurisdictional amount . . . [in diversity cases was] to prevent the delaying of a suit merely to accumulate the necessary amount for federal jurisdiction.") (internal quotations marks omitted); *see also*, 14 AA Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure, § 3712 (2009) ("The apparent purpose of excluding interest . . . is to prevent the plaintiff from delaying suit until the claim, with accruing interest, exceeds the statutory minimum . . . . Interest on coupons themselves, or on the bond, accruing after the maturity of either . . . is excluded as 'interest' in computing the amount in controversy.")

In his papers, plaintiff relies upon Transaero, Inc. v. La Fuerza Area Boliviana, 24 F.3d 457 (2d Cir. 1994), wherein the Second Circuit held:

> [W]here, as here, interest is owed as part of an underlying contractual obligation, unpaid interest becomes part of the principal for jurisdictional purposes.

*Id*. at 461. Although the post-maturity interest is part of an underlying contractual obligation, the court agrees with the court in Meding v. Receptopharm, Inc., *supra*., for the reasons stated, that the Second Circuit did not "[intend] to lay down so open-ended a rule that indefinitely accruing interest must always be added to the amount in controversy in determining whether a party has satisfied the jurisdictional threshold." 462 F. Supp. 2d at 351-353. As was the case in Meding, the court concludes that the post-maturity interest in this case is a mere accessory to the primary obligation and must be excluded from determining the amount in controversy under the plain language of § 1332(a).[9]

Although plaintiff contends that under 23 O.S. § 22, his damages include interest and therefore should be included in the jurisdictional amount, the court finds that plaintiff is not seeking to recover his interest pursuant to § 22 but pursuant to the obligation created by the bonds themselves. The court also rejects plaintiff's argument that the interest at issue is in the nature of a penalty and should be included in the jurisdictional amount. The Oklahoma Supreme Court has concluded that a contract to pay interest on a note at a higher rate after maturity does not necessarily provide for a penalty. Nat. Life. Ins. Co. v. Hale, 154 P. 536 (1916). The court is not convinced that the Tenth Circuit's decision in Cahill v. Hovenden, 132 F.2d 422 (10th Cir. 1942), requires a finding that the post-maturity interest at issue in this case exacts a penalty and should be included in determining the jurisdictional amount.

---

[9] This court notes, as was recognized by the Meding court, the Supreme Court in the Edwards case never suggested that the additional interest sought by plaintiff, "interest . . . from maturity" of the bonds and each coupon, should be included in the jurisdictional amount. It was only the matured coupon interest that was included in the jurisdictional calculation.

13

The court agrees with defendants that the claims of plaintiff and the putative class members may not be aggregated. The claims of plaintiff and the putative class members are not to "enforce a single title or right in which they have a common and undivided interest." Snyder v. Harris, 394 U.S. 332, 335 (1969). Rather, the claims of the plaintiff and the putative class members amount to separate and independent contract claims seeking to recover under individual bonds. As the Tenth Circuit has already explained in this case, plaintiff's claims arise under Section 9.12 of the Indenture, which "was designed to provide an individual remedy to a bondholder, in contrast to the collective remedies outlined in the other provisions of the Indenture. The exercise of this individual right may be to the detriment of other bondholders." Brady v. UBS Financial Services, Inc., 538 F.3d 1319, 1326 (10th Cir. 2008) (footnote omitted). The court therefore concludes that the plaintiff's claims and the claims of the putative class members are not "common and undivided." The court therefore concludes that the claim of the plaintiff and the claims of putative class members may not be aggregated to satisfy the amount in controversy.

III.

Finally, plaintiff requests the court for leave to amend the complaint to add a request for payment of $82,000 in additional Series B Serial Zero Coupon Bonds which matured on June 1, 2009. Plaintiff had purchased these bonds prior to the filing of the original complaint and the bonds had reached a compound accreted value of $8,344.60 in 1994. Plaintiff thus contends that at the time he filed this action, he owned Series B Bonds of a value more than $75,000.00.

The amount in controversy must be measured by the state of the facts that existed at the time the complaint was filed. Symes v. Harris, 472 F.3d 754, 758 (10th Cir. 2006). Plaintiff would be seeking to recover on the additional Series B Bond pursuant to the remedy in § 9.12 of the Indenture, which gives the bondholder the

14

absolute and unconditional right to receive payment of the bond "on the respective Stated Maturities expressed in such Bond." As indicated, the stated maturity of the additional Series B Bonds was June 1, 2009. Plaintiff could not bring his claim on the additional bonds pursuant to § 9.12 until the bonds had matured. Because the bonds matured after the filing of the complaint, the court concludes that the additional bonds may not be used to determine the amount in controversy.

The court rejects plaintiff's argument that the additional Series B Bonds may be included in the amount in controversy as continuing damages resulting from the 1993 breach. Although the bonds were in default in 1993, plaintiff, as discussed, is seeking recovery of the bonds under the remedy provided for in § 9.12. That remedy allows recovery at maturity of the bonds. The court concludes that plaintiff may not use the Series B Bonds to satisfy the amount in controversy on the basis that they represent continuing damages flowing from the 1993 breach.

Courts allow the relation back of amendment that cure jurisdictional defects. *See*, 3 James WM Moore, Moore's Federal Practice, 15.19[2] (3d. ed. 2009). The court concludes that the proposed amendment cannot relate back to cure the jurisdictional defect. The new claim in regard to the additional Series B Bonds did not arise out of the "conduct, transaction, or occurrence set out – or attempted to be set out– in the original pleading." Rule 15(c)(2), Fed. R. Civ. P.; *see also*, Correspondent Services Corp. v. First Equities Corp. of Florida, 338 F.3d 119, 125 (2d Cir. 2003) (remanding to district court to address whether new declaratory judgment claim in amended complaint, brought under 28 U.S.C. § 1332, related back to commencement of action and stating that a new claim relates back to the commencement of the action if "the claim ... arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.") (quotation omitted).

15

While 28 U.S.C. § 1653 permits amendments to a complaint to cure defective allegations of jurisdiction, it does not "'empower federal courts to amend a complaint so as to produce jurisdiction where none actually existed.'" Narvaez, 149 F.3d at 1272 (quoting Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 831 (1989)). The court concludes that it cannot permit plaintiff to add a new claim to satisfy the amount in controversy when subject matter jurisdiction never actually existed over the present action. Id.

Rule 15(a)(2), Fed. R. Civ. P., provides that the "court should freely give leave when justice so requires." However, the court may also deny leave under Rule 15(a)(2) because of "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." Foman v. Davis, 371 U.S. 178, 182 (1962). In the case at bar, the court concludes that leave to amend should be denied because the amendment sought by plaintiff would be futile to cure the jurisdictional defect as to the amount of controversy. The court therefore concludes that plaintiff's request and motion to amend the complaint should be denied.

IV.

"'When federal subject matter jurisdiction is challenged based on the amount in controversy requirement, the plaintiff[] must show that it does not appear to a legal certainty that [he] cannot recover' the jurisdictional amount." Woodmen of World Life Ins. Society v. Manganaro, 342 F.3d 1213, 1216 (10th Cir. 2003) (quoting Watson v. Blankinship, 20 F.3d 383, 386 (10th Cir. 1994)). Although it is difficult for a dismissal to be premised on the basis that the requisite jurisdictional amount is not satisfied, dismissal under the legal certainty standard will be warranted when "a contract limits the possible recovery, when the law limits the amount recoverable, or

16

when there is an obvious abuse of federal court jurisdiction." Woodmen of World Life Ins. Society, 342 F.3d at 1217.  The court concludes that plaintiff has failed to show that it does not appear to a legal certainty that he cannot recover the jurisdictional amount. The court concludes that the bonds and the applicable law limit the jurisdictional amount of plaintiff's claim to $73,000.00.  Because plaintiff's claim against defendants does not exceed $75,000.00, the court concludes that it lacks subject matter jurisdiction over this action and defendants' motion to dismiss plaintiff's complaint for lack of subject matter jurisdiction must be granted.

V.

Accordingly, Defendants' Motion for Reconsideration, filed June 19, 2009 (doc. no. 75), is **GRANTED**.  The court's order of June 16, 2009 (doc. no. 72) is **VACATED**.  Defendants' Motion to Dismiss the Complaint for Lack of Subject Matter Jurisdiction (doc. no. 52), is **GRANTED**.  Plaintiff's Opposed Motion to Amend Complaint, filed August 14, 2009 (doc. no. 93), is **DENIED**.  The above-entitled action is **DISMISSED WITHOUT PREJUDICE**.

In light of the court's ruling, Plaintiff's Motion to Correct Order, filed July 21, 2009 (doc. no. 86) and Plaintiff's Motion for Class Certification, filed September 1, 2009 (doc. no. 97), are **DENIED** as **MOOT**.

DATED March 12, 2010.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

06-0282p019.wpd

17